UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LOUQUETTA R. O'CONNOR-SPINNER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN Acting ) <br> Commissioner of the Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) | Case No. 4:13-cv-00186-TWP-TAB |

**ENTRY ON JUDICIAL REVIEW**

This matter is once again before the Court on a request by Plaintiff Louquetta R. O'Connor-Spinner ("Ms. O'Connor-Spinner") for judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB") under Title II and Social Security Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), following a remand by the Seventh Circuit Court of Appeals for an administrative rehearing. For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

### I.   BACKGROUND

**A.   Procedural History**

Ms. O'Connor-Spinner filed applications for SSI and DIB effective January 29, 2005, alleging a disability onset date of December 18, 2003, due to symptoms stemming from a blood disorder, arthritis, and obesity. After the agency denied Ms. O'Connor-Spinner's applications initially and upon reconsideration, she appeared with counsel and testified at a hearing before Administrative Law Judge Ronald T. Jordan ("ALJ Jordan"), as well as a vocational expert, on

January 31, 2006.  On June 21, 2006, ALJ Jordan issued a decision in which he found that Ms. O'Connor-Spinner was not disabled under the Act because she was able to perform a significant number of jobs in the economy despite her functional limitations.  The Appeals Council denied review of ALJ Jordan's decision, making it the final decision of the Commissioner.

Ms. O'Connor-Spinner filed a request for review with this Court, which upheld ALJ Jordan's decision.  She then filed an appeal with the Court of Appeals for the Seventh Circuit.  On November 29, 2010, the Circuit Court remanded Ms. O'Connor-Spinner's case to the agency for further proceedings.  The Seventh Circuit held that ALJ Jordan failed to direct the Vocational Expert ("the VE") to the totality of Ms. O'Connor-Spinner's limitations, thus failing to support ALJ Jordan's step five determination that she could perform some jobs and thus was not disabled.  The Circuit Court noted that ALJ Jordan found Ms. O'Connor-Spinner had moderate deficiencies in concentration, persistence, or pace and, therefore, was required to include this limitation in his hypothetical question to the VE to account for those deficiencies.

Upon remand, Ms. O'Connor-Spinner's earlier claims were merged with applications for SSI and DIB that she filed on September 10, 2009.  She also submitted new evidence and testified at a supplemental hearing in June 2012, which was presided over by a new Administrative Law Judge Dwight D. Wilkerson (the "ALJ").  In August 2012, the ALJ found that Ms. O'Connor-Spinner had severe physical impairments, however, she did not have a listing-level impairment or combination of impairments.  The ALJ specifically found that her impairments due to depression did not rise to the level of a "severe" mental impairment, and therefore concluded that she did not have a mental impairment that significantly limited her ability to perform basic work-related activities, and found that she was not disabled because she could perform a significant number of jobs.  The Appeal's Council denied review, making the ALJ's decision the final decision of the

Commissioner. Ms. O'Connor-Spinner has now filed this action seeking judicial review of the agency's second decision finding that she is not disabled.

**B.      Factual Background**

Ms. O'Connor-Spinner was about 34 years old on her alleged onset date and 43 years old when the ALJ rendered his decision in August 2012. She is a high school graduate and performed past relevant work as a delicatessen clerk, nurse's aide, shoe gluer and fast-food worker.

The parties agree on the significance of Ms. O'Connor-Spinner's physical impairments due to degenerative disc disease, bilateral carpal tunnel syndrome, sleep apnea, restrictive lung disease and obesity; thus the only relevant facts for purposes of this appeal relate to Ms. O'Connor-Spinner's mental impairments.  Ms. O'Connor-Spinner alleged an onset date for her depression of December 2003. Although the record does not contain treatment records from any mental health providers between 2002 and her first hearing in January 2006, physicians investigating her physical ailments observed signs of and alluded to a history of depression.  Ms. O'Connor-Spinner was sent to psychologist Dr. Kamla Paul, Ph.D. at the request of the Disability Determination Bureau for a consultative psychological examination in May 2004.  Dr. Paul diagnosed Ms. O'Connor-Spinner with depressive disorder, and noted that she has a blood disorder that causes blood clots in her brain, resulting in stuttering, confusion, and forgetting her identity.  (Tr. 247-50.)

In late May 2004, state agency psychological consultant Dr. D. Unversaw, Ph.D. ("Dr. Unversaw") reviewed Ms. O'Connor-Spinner's records and concluded in his summary that her psychological condition "appears to moderately affect her concentration/pace/persistence" but that she had the "ability to perform moderately complex work-related tasks."  (Tr. 267.)  However, on the Psychiatric Review Technique worksheet, Dr. Unversaw checked the box noting that she only

3

had a mild degree of difficulty in maintaining concentration, persistence, or pace. (Tr. 261.) Ms. O'Connor-Spinner testified at her first hearing that she was in treatment at Community Mental Health Center ("CMHC") but did not provide treatment records. ALJ Jordan held the record open for thirty days to allow her to submit additional mental health records, but no records were submitted. ALJ Jordan found that Ms. O'Connor-Spinner's depression was a severe impairment based upon Dr. Unversaw's opinion, but noted the inconsistencies in Dr. Unversaw's report with regard to Ms. O'Connor-Spinner's difficulties with concentration.

After Ms. O'Connor-Spinner filed subsequent applications in September 2009, additional mental health records were provided. She provided records of her visits to CMHC in March 2006, where she was diagnosed with major depression. Those records indicated that Prozac helped with Ms. O'Connor-Spinner's depression and anger. Records from CMHC from December 2010 through June 2011 indicated that Ms. O'Connor-Spinner was learning coping skills to deal with family stressors, her depression was better and she reported no side effects from her medication. Dr. Robert Kurzhals, Ph.D. ("Dr. Kurhzhals") performed a consultative psychological examination for the State agency on December 2, 2009. Dr. Kurzhals adopted the diagnosis of bipolar disorder; however, it was only "by history" as reported by Ms. O'Connor-Spinner, and he noted that she did not appear to be particularly anxious or manic.

## II.    DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any

other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546

F.3d 456, 462 (7th Cir. 2008). While the court reviews the ALJ's decision deferentially, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. O'Connor-Spinner met the insured status requirements of the Act through June 30, 2008, for purposes of DIB. At step one, the ALJ found that Ms. O'Connor-Spinner had not engaged in substantial gainful activity since December 18, 2003, the alleged onset date. At step two, the ALJ found that Ms. O'Connor-Spinner had the following severe impairments: degenerative disc disease, bilateral carpal tunnel syndrome, sleep apnea, restrictive lung disease, and obesity. At step three, the ALJ found that Ms. O'Connor-Spinner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. O'Connor-Spinner has the RFC to perform sedentary work with the following restrictions: lift and carry ten pounds occasionally and five pounds frequently; stand/walk for two hours out of an eight-hour work day, but no more than fifteen to thirty minutes

in any single hour; sit for eight hours out of an eight-hour day, but must have the opportunity at 30-minute intervals to stand and stretch for up to two minutes to relieve pressure on her back; occasionally climb stairs or ramps and can bend at the waist sufficiently to do table or desk work; no other postural activities, such as balancing, crouching, crawling, kneeling or climbing ladders, scaffolds, or ropes; frequently handle and finger bilaterally; avoid concentrated exposure to dust, fumes, gasses, strong odors, temperature extremes and excessive humidity; and should only perform work involving routine, repetitive tasks and understanding and carrying out only simple instructions. At step four, the ALJ determined that Ms. O'Connor-Spinner was unable to do any of her past relevant work. At step five, the ALJ found that considering Ms. O'Connor-Spinner's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, concluding that she is not disabled as defined by the Act.

## IV.   ANALYSIS

Ms. O'Connor-Spinner argues that the ALJ erred by finding that her depression was not a severe impairment at step two and thus erred in his conclusion that she did not have moderate difficulties with concentration, persistence or pace. She also argues that the ALJ erred by not following the Court of Appeals' order to ask hypothetical questions that included her moderate limitations in concentration, persistence, and pace, and that such error was not harmless.

### A.   Law of the Case Doctrine is Not Applicable

Ms. O'Connor-Spinner argues that the law of the case doctrine prohibited the ALJ from disturbing the previous ALJ's finding that her depression was a severe impairment and that she has moderate difficulties with concentration, persistence or pace, and the mandate rule required the ALJ to include those limitations in his hypothetical questions to the VE. The law of the case doctrine "requires the trial court to conform any further proceeding on remand to the principles set

forth in the appellate opinion unless there is a compelling reason to depart, [and] is applicable to judicial review of administrative decisions." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (citing *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997); *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)) (internal quotations omitted). "It requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Id.*

Ms. O'Connor-Spinner's case does not involve a situation to which the law of the case doctrine applies. A ruling that evidence was insufficient to support a particular finding is the type of ruling that establishes the law of the case. *Id.* at 803. In addition, "[n]ew evidence can furnish compelling ground for departure from a previous ruling." *Id.* Following the remand by the Court of Appeals, new evidence was submitted in connection with Ms. O'Connor-Spinner's September 2009 application for benefits, which had been consolidated with her remanded case because the Court's actions rendered them duplicative. The ALJ was specifically instructed by the Court of Appeals to "explain why he does not credit evidence that would strongly support a claim of disability, or why he concludes that such evidence is outweighed by other evidence." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010). This was not a situation in which the appellate court found that there was insufficient evidence to support a particular conclusion reached by the ALJ; rather, the ALJ was instructed to review the evidence and provide an explanation as to why the evidence—specifically, the report from Dr. Unversaw—was not credible. *Id.*

The ALJ adequately addressed the new evidence and provided an explanation for his finding that Ms. O'Connor-Spinner's depression was not a severe impairment, and that she did not have moderate limitations in concentration, persistence or pace. The ALJ noted that Dr.

Unversaw's opinion that Ms. O'Connor-Spinner's depression caused moderate limitations was not corroborated or supported by any other evidence in the record. (Tr. 830.) Both records from her treating physicians and the consultative examiners lacked evidence of anxious or manic behavior associated with her alleged bipolar disorder, and showed that her depression symptoms were better with medication. (Tr. 828.) The ALJ noted "in all of the voluminous documents that address physical impairments, there is scarcely even a hint of significant problems with social functioning or concentration, persistence and pace . . . . indications of mental issues are conspicuously absent from those records." (Tr. 828.) The ALJ also cites to evidence from physical examinations in which the nursing notes indicate that her psychosocial assessment was "within normal limits" and there was no significant evidence of depression. (Tr. 829.)

Ms. O'Connor-Spinner cites to evidence that she claims the ALJ ignored in finding that her depression was not a severe impairment. However, the ALJ is not required to cite to every piece of evidence in the record, and is only required to build an accurate and logical bridge from the facts to his conclusion. *Carlson*, 999 F.2d at 181. Ms. O'Connor-Spinner has not explained how the evidence she cites supports a finding of disability, or how it contradicts the ALJ's findings that the record as a whole does not support the conclusion that she had significant problems with social functioning or concentration, persistence and pace. The ALJ adequately discussed the relevant evidence from both her original and subsequent applications and why such evidence does not support a finding that her depression was a severe impairment, or that she had more than mild difficulties with concentration, persistence, or pace, and also explained why he rejected Dr. Unversaw's opinion originally relied upon by ALJ Jordan. (Tr. 826-831.) The Court finds that the ALJ followed the directives of the Court of Appeals by explaining why he did not fully credit the opinion of Dr. Unversaw and why he concluded that evidence stating that Ms. O'Connor-

9

Spinner had moderate limitations in concentration, persistence, or pace was outweighed by other evidence that did not support this conclusion. Thus, the Court finds that there were compelling grounds for the ALJ's departure from the previous factual findings regarding Ms. O'Connor-Spinner's mental limitations.

**B.     The ALJ's Hypothetical Complied with the Court of Appeals' Ruling**

Ms. O'Connor-Spinner next argues that the ALJ erred by not following the Court of Appeals' order to ask hypothetical questions which included her moderate limitations in concentration, persistence or pace. As discussed above, the ALJ properly supported his conclusion that Ms. O'Connor-Spinner did not have moderate limitations in concentration, persistence or pace, and thus was not required to account for such a limitation in his hypotheticals to the VE. However, despite not being required to do so, the ALJ specifically asked the VE a series of hypotheticals in which he accounted for possible difficulties in concentration, persistence or pace.

As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). While it has been established that employing terms like "simple repetitive tasks," "simple, routine tasks," or "unskilled work" are insufficient to bring a VE's attention to a claimant's limitations in concentration, persistence or pace, there is no "per se requirement" that specific terminology be used in the hypothetical in all cases. *O'Connor-Spinner*, 627 F.3d at 619. Moreover, the Seventh Circuit has stated that, "for most cases, the ALJ should refer expressly to limitations on concentration, persistence or pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620-21. This is precisely what the ALJ did at Ms. O'Connor-Spinner's hearing on remand, as he

"followed best practices and expressly included [the claimant's] moderate limitations in concentration, persistence, and pace." *Givens v. Colvin*, 551 F. App'x 855, 862 (7th Cir. 2013).

In his second hypothetical, the ALJ asked the VE, "due to limitations in concentration, persistence or pace, let's say this person cannot do any work involving strict production quotas or fast paced." (Tr. 2064.) This is precisely what the Seventh Circuit instructed in its opinion in this action, and the ALJ's explicit reference to Ms. O'Connor-Spinner's limitations on concentration, persistence or pace satisfies the requirement to include all of her limitations in the hypothetical. In addition, the ALJ asked the VE to assume that "[s]he should perform work involving only routine, repetitive tasks, and understanding and carrying out only simple instruction," and asked the VE to assume Ms. O'Connor-Spinner would be off task ten percent of the time. (Tr. 2063-64.) The hypothetical was not merely limited to "simple, repetitive work" which was found to be insufficient by the Seventh Circuit in this case. Because the ALJ explicitly referenced Ms. O'Connor-Spinner's difficulties with concentration, persistence or pace, his hypothetical to the VE during the hearing was adequate and complied with the requirements set forth by the Circuit Court.

## V.   CONCLUSION

Based upon the forgoing, the Court finds that he ALJ adequately supported his re-determination that Ms. O'Connor-Spinner does not have moderate limitations in concentration, persistence or pace, and was therefore not required to include it in the hypothetical to the VE. However, the Court further concludes that the ALJ explicitly referred to limitations in concentration, persistence or pace in the hypothetical presented to the VE at the hearing, thus satisfying the order of the Circuit Court. The decision of the Commissioner is **AFFIRMED**, and Ms. O'Connor-Spinner's claims are **DISMISSED**

**SO ORDERED.**

Date: 6/8/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov